14 P.3d 525

2000-NMSC-035

In the Matter of ADJUSTMENTS TO FRANCHISE FEES REQUIRED BY the ELECTRICAL UTILITY INDUSTRY RESTRUCTURING ACT OF 1999.

County of Bernalillo, New Mexico, Appellant,

v.

New Mexico Public Regulation Commission, Appellee,

and

El Paso Electric Company, Public Service Company of New Mexico, Texas–New Mexico Power Company, New Mexico Industrial Energy Consumers, Southwestern Public Service Company, and New Mexico Attorney General, Intervenors.

No. 25,893.

Supreme Court of New Mexico.

Nov. 15, 2000.

Sheehan, Sheehan & Stelzner, P.A., Timothy M. Sheehan, Kim A. Griffith, Albuquerque, NM, for Appellant.

Stacey J. Goodwin, Associate General Counsel, Santa Fe, NM, for Appellee.

Keleher & McLeod, P.A., Clyde F. Worthem, Sarah D. Smith, Bill R. Garcia, Albuquerque, NM, Hinkle, Cox, Eaton, Coffield & Hensley, Jeffrey L. Fornaciari, Gary W. Larson, Rubin, Katz, Salazar, Alley & Rouse, Donald M. Salazar, Santa Fe, NM, for Intervenors.

## OPINION

SERNA, Justice.

{1} The County of Bernalillo appeals pursuant to NMSA 1978, § 62–11–1 (1993), challenging the New Mexico Public Regulation Commission's final order in NMPRC Case 3071 with regard to the Electric Utility Industry Restructuring Act of 1999, NMSA 1978, §§ 62–3A–1 to –23 (1999, as amended through 2000) (Restructuring Act). In Case 3071, the Commission, on its own motion, granted utilities a delay in the implementation of franchise fee adjustments. The County asserts that this order was contrary to NMSA 1978, § 62–3A–18(A) (1999). The County argues that this section took effect immediately on April 8, 1999, under the Restructuring Act's emergency clause, 1999 N.M. Laws, ch. 294, § 24, and that the Commission unlawfully extended compliance by investor-owned utilities until December 31, 1999, and until March 31, 2000, for rural electric cooperatives. El Paso Electric Company, Public Service Company of New Mexico (PNM), Texas–New Mexico Power Company, New Mexico Industrial Energy Consumers, Southwestern Public Service Company and the New Mexico Attorney General intervened. We review only the County's contention that the Commission's action violated the principle of separation of powers. We do not disturb the Commission's order.

## I. Facts and Background

{2} In *City of Albuquerque v. New Mexico Public Service Commission,* 115 N.M. 521, 533, 854 P.2d 348, 360 (1993) (citation omitted), this Court described franchise fees in relation to utilities:

In exchange for granting a franchise, a municipality may exact consideration from the utility, usually in the form of a franchise fee. This may equal some percentage of the utility's gross revenues or net earnings, or it may equal some other proportion of the utility's income derived from providing service in the municipality.

The cost of the franchise fee may then be passed on by the utility to its customers. *See GTE Southwest Inc. v. Taxation & Revenue Dep't,* 113 N.M. 610, 617, 830 P.2d 162, 169 (Ct.App.1992). The Legislature, through Section 62–3A–18(A), directs that "[a] franchise fee charge shall be stated as a separate line entry on a public utility's or distribution cooperative utility's bills and shall only be recovered from customers located within the jurisdiction of the government authority imposing the franchise fee." The Commission opened Case 3071 on its own motion without any parties before it. In its final order, the Commission found that utilities could not comply with Section 62–3A–18(A) without making rate adjustments because many of the utilities include franchise fees in their base rates. The Commission relied on NMSA 1978, § 62–3A–4(D) (1999), to grant a delay. Section 62–3A–4(D) states that "[t]he commission may delay customer choice and other dates established in the Electric Utility Industry Restructuring Act of 1999 by up to one year upon finding that an orderly implementation of customer choice cannot be accomplished without the delay." In its final order for Case 3071, the Commission found:

Most electric utilities regulated by the Commission have included franchise fees in base rates in the past; therefore, a majority of the electric utilities' billing practices do not conform with the new statutory requirements. Because conformance with the new law may require differing rate adjustments for each electric utility, in accordance with Section [62–3A–]4(D) the Commission finds that it is in the public interest to grant a variance and extension of time for implementation of Section [62–3A–18(A)]. The Commission further finds that this delay will allow for the orderly and proper implementation of line item franchise fee charges on utility bills as part of the transition to customer choice.

{3} The County filed a motion to intervene to amend, vacate or suspend the final order of Case 3071. This motion was deemed denied by operation of law. The County argues that the Legislature, through Section 62–3A–18(A), mandated that, as of April 8, 1999, utilities may no longer recover franchise fee charges from customers outside the jurisdiction of government authorities imposing such fees. The County further argues that the Commission improperly contravened this directive in the final order without providing for refunds or credits. The County asserts that this action is beyond the scope of the Commission's authority and encroaches on the province of the Legislature in violation of separation of powers doctrine as articulated by Article III, Section 1 of the New Mexico Constitution. Further, the County maintains that the final order was arbitrary and capricious because the Commission did not give proper notice or allow a hearing. Finally, the County asserts that the Commission lacked evidence to support its findings. The County contends that this Court must compel the Commission to order the utilities to refund franchise fees which they improperly collected.

{4} Previously, the County, as an intervenor, raised the same issue in an unrelated rate matter, Case 2761, before the Commission. This Court vacated the Commission's final order for Case 2761 in *State ex rel. Sandel v. New Mexico Public Utility Commission,* 1999–NMSC–019, ¶ 30, 127 N.M. 272, 980 P.2d 55. On remand, the parties negotiated a proposed settlement of Case 2761 which they presented to the Commission for approval. The County objected to paragraph eight of the stipulation, which gave PNM an open-ended time frame to comply with Section 62–3A–18(A). The Commission found that this issue should instead be raised on a case-by-case basis and

informed the County that it could file a separate proceeding to this end. Subsequently, the Commission opened and closed Case 3071 on its own motion, granting all regulated utilities an extension of time regarding Section 62–3A–18(A). The County notes that the Commission did not provide for a refund or credit of franchise fees recovered from customers outside franchise fee jurisdictions between April 8, 1999, and the deadlines imposed by the Commission.

## II. Discussion

### A. Appellate Jurisdiction

■ {5} The County relies upon Section 62–11–1 for our jurisdiction to review this matter, which provides that "[a]ny party to any proceeding before the commission" may appeal to this Court for review of final orders. However, the Commission opened Case 3071 on it own motion without the complaint of any party; thus, the County is not a party to Case 3071. We also conclude that the County's rights are not "directly affected" by the order within the meaning of Section 62–11–1 so as to allow this Court to designate it as a party.[1] However, NMSA 1978, § 62–12–2 (1941) provides in part:

> In case the commission or its members shall undertake to act in excess of its jurisdiction and authority conferred under this act, or without jurisdiction; or in case the said commission or its members shall undertake to exercise rights or privileges not conferred upon it by this act or by law; or in case the said commission or its members shall fail or refuse in the performance of any duties or obligations imposed upon it by the terms of this act, then the person interested or whose rights are affected may bring suit by mandamus, prohibition, injunction or other appropriate remedy against the said commission in its statutory name in this act provided, to compel performance of the duties and obligations imposed upon said commission by this act, or to restrain said commission and its members from the exercise of jurisdiction not by this act conferred.

Although not directly affected, the County, on behalf of its affected citizens, is "interested" in the Commission's order for purposes of Section 62–12–2. We conclude that the County's proper remedy is under Section 62–12–2. Nonetheless, under Section 62–12–2, "[a]ny such action shall be brought against said [C]ommission in the district court of Santa Fe county, New Mexico, or in the district court of the county in which the complaint or controversy arose." The County did not bring this action before the district court, as provided in Section 62–12–2, but instead brought an appeal before this Court. Because we conclude that the County has no right of appeal under Section 62–11–1, we treat the County's notice of appeal as a petition for writ of mandamus. *See United Water N.M., Inc. v. New Mexico Pub. Util. Comm'n*, 1996–NMSC–007, 121 N.M. 272, 274, 910 P.2d 906, 908 (treating a petition for writ of mandamus as a notice of appeal from a Commission decision); *see also, e.g., Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1,

---

1. As the County points out, this Court concluded that the language "any party to any proceeding" of Section 62–11–1 "is broad and requires liberal application." *Community Pub. Serv. Co. v. New Mexico Pub. Serv. Comm'n*, 99 N.M. 493, 494–95, 660 P.2d 583, 584–85 (1983). While we do not retreat from our interpretation of Section 62–11–1, we believe that our holding in *Community* is best explained by reference to the plain language of the statute. Section 62–11–1 provides that "any party" may seek an appeal from a Commission order. However, the statute also allows "[a]ny person whose rights may be directly affected by the appeal [to] appear and become a party." Section 62–11–1. In *Community*, although there were no parties to the proceeding, the appealing utility companies' rights were directly affected by the Commission's actions regarding the utilities' rates and the Commission's direction to the utilities to submit related expenditures. *See id.* at 494, 660 P.2d at 584. We believe that our interpretation of the phrase "any party" in *Community* is consistent with the Legislature's expansion of "party" as one whose rights are directly affected by the appeal. By contrast, the County itself, as an entity, is not directly affected by the Commission's order, but is instead asserting itself indirectly on behalf of unnamed County residents who live in unincorporated areas. Under these circumstances, considering other remedies available under the Public Utility Act, we are unwilling to expand the meaning of the term "party" beyond that contemplated by the Legislature. Otherwise, the Legislature's discussion of those "directly affected" in Section 62–11–1 becomes mere surplusage.

3 (1st Cir.1999) ("Generally speaking, we have the power to treat a notice of appeal as a request for a writ of mandamus."). Thus, the threshold question, one which we answer in the negative, is whether it is appropriate for this Court to exercise its original jurisdiction in mandamus under Article VI, Section 3 of the New Mexico Constitution. *See Sandel*, 1999 NMSC 019, ¶ 10, 127 N.M. 272, 980 P.2d 55 (stating that Section 62–12–2 provides additional, statutory authority for issuance of mandamus by the district courts).

{6} Mandamus is appropriate "to compel the performance of an affirmative act by another where the duty to perform the act is clearly enjoined by law and where there is no other plain, speedy and adequate remedy in the ordinary course of law." *Lovato v. City of Albuquerque*, 106 N.M. 287, 289, 742 P.2d 499, 501 (1987); *accord Rainaldi v. Public Employees Retirement Bd.*, 115 N.M. 650, 653–54, 857 P.2d 761, 764–65 (1993). " 'This Court on several occasions has recognized that mandamus is an appropriate means to prohibit unlawful or unconstitutional official action.' " *Sandel*, 1999–NMSC–019, ¶ 11, 127 N.M. 272, 980 P.2d 55, (quoting *State ex rel. Clark v. Johnson*, 120 N.M. 562, 570, 904 P.2d 11, 19 (1995)). Assuming mandamus would otherwise lie, we exercise our power of original jurisdiction in mandamus if the case presents a purely legal issue that is a fundamental constitutional question of great public importance. *Clark*, 120 N.M. 562, 570, 904 P.2d 11, 19; *see* Rule 12–504(B)(1)(b) NMRA 2000 (requiring petitioners to set forth "the circumstances making it necessary or proper to seek the writ in the Supreme Court if the petition might lawfully have been made to some other court in the first instance"); Charles T. DuMars & Michael B. Browde, *Mandamus in New Mexico*, 4 N.M.L.Rev. 155, 157 (1974) ("The standard applied in exercising original jurisdiction under the Rule has been whether the particular case is of such public importance to the state as to require original consideration by the high court.").

{7} We conclude that the question which the County presents, whether the Commission has statutory authority to grant an extension to utilities regarding franchise fees, is purely a question of law. *See State v. Rowell*, 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995) ("Interpretation of a statute is an issue of law, not a question of fact."). In *Sandel*, 1999–NMSC–019, ¶¶ 26–28, 127 N.M. 272, 980 P.2d 55, we concluded that the Commission attempted to deregulate the electric power industry beyond the legislative grant of authority. We deemed this issue to be a fundamental constitutional question of great public importance because it implicated the doctrine of separation of powers. *See id.* ¶¶ 11, 30. The County similarly argues here that the Commission acted in excess of its jurisdiction and authority conferred by the Legislature, in violation of the doctrine of separation of powers. Thus, whereas on direct appeal this Court determines whether the Commission's "order is supported by substantial evidence, is neither arbitrary nor capricious, and is within the Commission's scope of authority," *El Vadito de los Cerrillos Water Ass'n v. New Mexico Pub. Serv. Comm'n*, 115 N.M. 784, 787, 858 P.2d 1263, 1266 (1993); *accord Attorney Gen. v. New Mexico Pub. Serv. Comm'n*, 101 N.M. 549, 553, 685 P.2d 957, 961 (1984), we limit our review in this case to the single question of whether the Commission violated the principle of separation of powers in order to determine whether to exercise our power of original jurisdiction in mandamus because we treat the County's appeal as a petition for writ of mandamus. *Cf. Sandel*, 1999–NMSC–019, ¶ 11, 127 N.M. 272, 980 P.2d 55, (similarly limiting the issues presented to this Court). Because, for the reasons that follow, we conclude that this case does not involve a fundamental constitutional question of great public importance, we need not address the general mandamus question regarding the need for expeditious resolution and the availability of alternative remedies. *Cf. id.* (listing factors considered in the exercise of original mandamus jurisdiction).

### B. Legislative Authority

{8} The County asserts that only the Legislature possesses the authority to mandate that utilities may no longer collect franchise fees from customers outside the government jurisdiction imposing the fees, and that the Legislature, through Section 62–3A–

18(A), has pronounced that utilities may only collect fees from customers within the jurisdiction, effective April 8, 1999. The County maintains that the Commission modified the express terms of the Restructuring Act, unlawfully intruding upon the province of the Legislature in violation of Article III, Section 1 of the New Mexico Constitution. The Commission argues that it acted under express statutory authority.

{9} " 'In construing a particular statute, a reviewing court's central concern is to determine and give effect to the intent of the legislature.' " *Public Serv. Co. v. New Mexico Pub. Util. Comm'n,* 1999–NMSC–040, ¶ 18, 128 N.M. 309, 992 P.2d 860 (quoting *State ex rel. Klineline v. Blackhurst,* 106 N.M. 732, 735, 749 P.2d 1111, 1114 (1988)). In order to determine legislative intent, this Court looks primarily to the plain language of the statute, giving ordinary meaning to the words used. *See Public Serv. Co.,* 1999–NMSC–040, ¶ 18, 128 N.M. 309, 992 P.2d 860; *Wilson v. Denver,* 1998–NMSC–016, ¶ 16, 125 N.M. 308, 961 P.2d 153; *United Water,* 121 N.M. at 276, 910 P.2d at 910.

{10} When an agency that is governed by a particular statute construes or applies that statute, the court will begin by according some deference to the agency's interpretation. The court will confer a heightened degree of deference to legal questions that implicate special agency expertise or the determination of fundamental policies within the scope of the agency's statutory function. However, the court is not bound by the agency's interpretation and may substitute its own independent judgment for that of the agency because it is the function of the courts to interpret the law. *Morningstar Water Users Ass'n v. New Mexico Pub. Util. Comm'n,* 120 N.M. 579, 583, 904 P.2d 28, 32 (1995) (citations, quoted authority, and quotation marks omitted).

{11} The Legislature has granted the Commission

general and exclusive power and jurisdiction to regulate and supervise every public utility in respect to its rates and service regulations and in respect to its securities, all in accordance with the provisions and subject to the reservations of the Public Utility Act, and to do all things necessary and convenient in the exercise of its power and jurisdiction.

NMSA 1978, § 62–6–4(A) (2000). The Public Utility Act, NMSA 1978, §§ 62–1–1 to 62–13–14 (1887, as amended through 2000), "shall be liberally construed to carry out its purposes." NMSA 1978, § 62–3–2(B) (1985). Included in the Legislature's stated purpose of the Restructuring Act is to "provide a framework and time schedule for the restructuring of the electric industry to prepare for full competition in the energy supply and services segments of the electric industry." NMSA 1978, § 62–3A–2(B)(1) (1999). As described above, Section 62–3A–4(D) authorizes the Commission to delay customer choice and other dates established in the Restructuring Act by up to one year upon a Commission finding that an orderly implementation of customer choice cannot be accomplished without such a delay.

{12} The Commission asserts that these provisions provide it express authority to extend the implementation date for franchise fee billing and that the language is unambiguous, requiring application of the literal meaning of the words. The Commission notes that the Legislature included the provision regarding franchise fees within the Restructuring Act, and thus argues that any date of enforcement in relation to Section 62–3A–18(A) falls within the Commission's authority to delay implementation under Section 62–3A–4(D).

{13} It is the position of the County that Section 62–3A–4(D) does not authorize the Commission to grant the extension of time regarding franchise fees. The County argues that because franchise fees do not relate to customer choice, Section 62–3A–4(D) is inapplicable. The County asserts that "[r]eading the [Restructuring] Act as a whole, it is clear that the limitation on franchise fee recovery in Section [62–3A–]18(A) is separate and apart from the major subject of the Act—that is, restructuring of the electric utility industry in New Mexico to allow for the implementation of 'customer choice' in a competitive electricity supply market."

{14} To limit Section 62–3A–18(A) as the County argues would require the

Commission to disregard the Legislature's language authorizing the Commission to delay "other dates established in the Electric Utility Industry Restructuring Act." Section 62–3A–4(D). Generally, statutory language is not regarded as superfluous. *See City of Albuquerque*, 115 N.M. at 529, 854 P.2d at 356 (rejecting an argument which resulted in a superfluous provision); *Western Investors Life Ins. Co. v. New Mexico Life Ins. Guar. Ass'n (In re Rehabilitation of W. Investors Life Ins. Co.)*, 100 N.M. 370, 373, 671 P.2d 31, 34 (1983) ("Statutes must be construed so that no part of the statute is rendered surplusage or superfluous."). Contrary to the County's assertion that Section 62–3A–18(A) is separate from the Restructuring Act, the section is located within and is thus part of the Restructuring Act.

{15} Section 62–3A–4(D) requires a Commission "finding that an orderly implementation of customer choice cannot be accomplished without the delay" prior to a Commission order granting an extension of time. The County argues that the Commission did not make this requisite finding because it had no evidence before it.

{16} The Commission counters that it properly relied on its expertise in making procedural decisions. The Commission relied upon the finding that most utilities collect franchise fees as part of their base rates, that the Commission must approve rate changes, and that the Commission is familiar with scheduling. Based on these findings, the Commission asserts that it properly determined that the orderly implementation of customer choice could not be accomplished without an extension of time for utilities to comply with the requirements of Section 62–3A–18(A).

{17} Intervenors PNM, Southwestern Public Service Company and Texas–New Mexico Power Company also argue that if the Legislature intended for the implementation of Section 62–3A–18(A) on the effective date of April 8, 1999, then the electric utilities were automatically in violation of this provision. The Commission asserts that without the time extension, the utilities would have had to charge rates which were unapproved by the Commission in order to comply with the Section. The Commission contends that this would lead to a result con-trary to the primary purpose of the Restructuring Act, which provides for a transition period to full competition.

{18} Public utilities may not modify an established rate without Commission approval. *See* NMSA 1978, § 62–8–7(B) (1999) (listing requirements for public utilities to change rates). Under the County's argument that Section 62–3A–18(A) immediately required a change in rate collecting, the provision prohibiting utilities from changing their rates without Commission approval and Section 62–3A–18(A) would conflict. Thus, we conclude that the Commission reasonably found that the utilities could not alter franchise fee billing without modifying rates.

{19} With respect to the principle of separation of powers, "an unlawful conflict or infringement occurs when an administrative agency goes beyond the existing New Mexico statutes or case law it is charged with administering and claims the authority to modify this existing law or to create new law on its own." *Sandel*, 1999–NMSC–019, ¶ 12, 127 N.M. 272, 980 P.2d 55. In this case, the Commission has not modified or created new law on its own; rather, the Commission was presented with an apparent conflict between two statutes, Section 62–8–7(B) and Section 62–3A–18(A), and has attempted to interpret the statutes in a harmonious manner, giving effect to each, by relying on statutory language appearing in a third statute, Section 62–3A–4(D). *See* NMSA 1978, § 12–2A–10(A) (1997) ("If statutes appear to conflict, they must be construed, if possible, to give effect to each."). *See generally Public Serv. Co.*, 1999–NMSC–040, ¶ 24, 128 N.M. 309, 992 P.2d 860. The County therefore fails to demonstrate an infringement by the Commission on " 'the essence of legislative authority-the making of law.' " *Sandel*, 1999–NMSC–019, ¶ 28, 127 N.M. 272, 980 P.2d 55 (quoting *Clark*, 120 N.M. at 573, 904 P.2d at 22). Under these circumstances, we believe this case does not involve a fundamental constitutional question of great public importance, and we decline to exercise our constitutional power of original jurisdiction in mandamus to vacate the Commission's order.

### III. Conclusions

{20} We conclude that the Commission's extension of implementation dates for fran-

chise fee charges does not intrude upon the province of the Legislature and thus does not implicate a fundamental constitutional question of great public importance necessary for this Court to exercise original mandamus jurisdiction. Section 62–3A–4(D) contains express language authorizing the Commission to delay dates established within the Restructuring Act. The Commission "[found] that an orderly implementation of customer choice cannot be accomplished without the delay," as required by Section 62–3A–4(D). Based on the Commission's finding that utilities would have been in violation of Section 62–3A–18(A) automatically on April 8, 1999, unless the utilities altered their rates, we believe the Commission reasonably attempted to resolve a potential conflict between two statutory provisions. Such action is not properly the subject of mandamus and does not justify our exercise of original jurisdiction under Article VI, Section 3 of the New Mexico Constitution. We therefore deny the County's petition for writ of mandamus.

{21} **IT IS SO ORDERED.**

MINZNER, C.J., BACA, FRANCHINI, and MAES, JJ., concur.