IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2009-NMCA-101

Filing Date:  July 28, 2009

Docket No. 28,049

IN THE MATTER OF THE APPLICATION BY
WATERFALL COMMUNITY WATER USERS
ASSOCIATION FOR PERMIT TO APPROPRIATE
PUBLIC SURFACE WATERS FROM CULBERSON
SPRING LOCATED IN NEW MEXICO

WATERFALL COMMUNITY WATER USERS
ASSOCIATION,

      Applicant-Appellant,

v.

NEW MEXICO STATE ENGINEER,

      Appellee,
and

MEL ELKINS,

      Protestant-Appellee.

APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY
James W. Counts, District Judge

Burroughs & Rhodes
Jefferson R. Rhodes
Alamogordo, NM

for Appellant

New Mexico Office of the State Engineer
DL Sanders, Special Assistant Attorney General
Susanne Hoffman-Dooley, Special Assistant Attorney General
Santa Fe, NM

1

for Appellee

Holt Babington Mynatt, P.C.
David McNeill, Jr.
Las Cruces, NM

for Appellee

**OPINION**

**VANZI, Judge.**

**{1}** Appellant, Waterfall Community Water Users Association (Waterfall), submitted an application for 320 acre-feet per year of surface water from Culberson Spring[1] within the Pecos River stream system. Appellant argued that it possessed a natural right, pursuant to NMSA 1978, Section 72-5-29 (1953), to those waters. The State of New Mexico Office of the State Engineer (State Engineer) dismissed the application. Waterfall appealed to the district court. The district court, upon its de novo review of the State Engineer's decision to dismiss, granted summary judgment against Waterfall. Waterfall appeals the district court's ruling. We affirm.

**I.     BACKGROUND**

**{2}** On September 23, 1999, Waterfall filed an application for unappropriated water with the Appellee, State Engineer. In that application, Waterfall sought appropriation of 320 acre-feet per year of surface water from Culberson Spring for use in its community water system. Waterfall's application was protested by Mel Elkins (Protestant), an individual named as Appellee in this matter. Waterfall's application was filed with the State Engineer's hearing unit, the entity within the Office of the State Engineer responsible for conducting the hearing on Waterfall's application.

**{3}** On May 31, 2001, prior to any evidentiary hearing, the Water Rights Division (WRD) of the State Engineer filed a motion to dismiss with the hearing unit of the State Engineer. The WRD requested dismissal of Waterfall's hearing and denial of its application. In support of its motion, the WRD argued that Culberson Spring is a tributary to Cox Canyon, which is in turn a tributary to Rio Peñasco, which is in turn a tributary to the Pecos River. The WRD asserted that the State Engineer had previously found, in an unrelated case, that there are no unappropriated waters available in the Pecos River stream system. Accordingly, the WRD asserted that Waterfall's request for appropriations from Culberson

---

[1] Throughout the record, the Spring has variously been referred to as "Culberson Spring" or "Culbertson Spring." For consistency, we refer to it throughout this opinion as "Culberson Spring."

2

Spring must be denied. To conclude otherwise would result in permitting the appropriation of water from a water system that is fully appropriated.

**{4}** In response, Waterfall disputed the WRD's claim that there was no unappropriated water in the Pecos River stream system. Additionally, Waterfall claimed that it had a "natural right" pursuant to Section 72-5-29 to appropriate water from Culberson Spring. The exact contours of this "natural right" and how this right could be said to ameliorate the fact that Waterfall was requesting water from a stream system that was fully appropriated was not explained in Waterfall's response. Indeed, Waterfall's sole argument was that Section 72-5-29 "would appear to provide for the specific situation that is present in this case, that is, diverting waters from the Culberson Spring for the domestic uses of the inhabitants of the land adjacent to Culberson Spring to distribute those waters as equitably as possible without interference with vested rights."

**{5}** On August 8, 2001, the State Engineer dismissed Waterfall's hearing and denied its application. The State Engineer found, concurring with the WRD, that the waters of Culberson Spring are tributary to the Pecos River, the Pecos River and its tributaries are fully appropriated, and thus there are no unappropriated waters available in the Pecos River stream system. Based on these facts, the State Engineer concluded that granting Waterfall's application would impair existing rights to water in the Pecos River stream system, would be detrimental to the public welfare, and would be contrary to the conservation of water within New Mexico.

**{6}** Pursuant to NMSA 1978, Section 72-7-1(E) (1971), Waterfall appealed the State Engineer's decision to the Twelfth Judicial District Court of New Mexico. On April 26, 2007, Protestant filed a motion for summary judgment with the district court. The State Engineer joined Protestant's motion and stated its agreement with the arguments set forth therein.

**{7}** In his motion, Protestant asserted that summary judgment was warranted because, as the State Engineer found, Waterfall cannot appropriate waters from Culberson Spring; all of that water is already fully appropriated. In addition, Protestant challenged Waterfall's assertion that it possessed a "natural right" to the waters of Culberson Spring pursuant to Section 72-5-29. This assertion, Protestant claimed, was premised on Waterfall's erroneous interpretation of Section 72-5-29 and ignored the clear import of the statutory scheme within which Section 72-5-29 falls. Protestant noted that the scope of Section 72-5-29 is limited to the narrow purpose of conserving and utilizing torrential flood water "so as to prevent erosion, waste, and damage caused by torrential floods." Further, the statutory provision provides that any distribution of water cannot interfere with vested rights which Waterfall was seeking to do.

**{8}** On May 7, 2007, Waterfall submitted its response to Protestant's motion for summary judgment. At the outset, Waterfall agreed with the facts as set forth in Protestant's motion and further conceded that the waters of the Pecos River stream system could be

found to be fully appropriated. In spite of these concessions, however, Waterfall claimed that because "virtually all" the surface water it sought to appropriate from Culberson Spring would be returned to the Pecos River stream system, an issue of material fact existed with regard to whether there is unappropriated water in the Pecos River stream system.

**{9}**	Waterfall also claimed that Section 72-5-29 provides Waterfall a "natural right" to appropriate and "distribute the benefit of the water in the stream system as equally as possible without interfering with vested rights." In order to address the concerns that Waterfall's natural right argument was likely to elicit in light of its acknowledgment that the Pecos River stream system is fully appropriated, Waterfall maintained that application of its natural right under Section 72-5-29 to the waters of Culberson Spring would have little or no adverse impact on the existing appropriations in the Pecos River stream system. Again, Waterfall maintained that the water it intended to divert from Culberson Spring for municipal and industrial purposes would be returned to the Pecos River stream system after use. As proof of this assertion, Waterfall submitted an affidavit from James Murrill, the operator of Waterfall's domestic water system. Mr. Murrill's affidavit stated that, based on his personal knowledge, most of the water Waterfall sought to appropriate would be "discharged back into the ground in the valley through individual liquid waste disposal systems."

**{10}**	The district court granted the motion for summary judgment on August 31, 2007, dismissing Waterfall's appeal. The district court found that there is no water available for appropriation in the Pecos River stream system, that Culberson Spring is a tributary and part of this stream system, and that the provisions of Section 72-5-29 were inapplicable to Waterfall's claim because the application was not made under that statute. Waterfall filed a timely notice of appeal of the district court's decision with this Court. The sole issue on appeal is whether Section 72-5-29 allows Waterfall to appropriate waters from Culberson Springs notwithstanding the fact that there is no unappropriated water in the Pecos River stream system
.

## II.	DISCUSSION

### A.	Standard of Review

**{11}**	"An appeal from the grant of a motion for summary judgment presents a question of law and is reviewed de novo." *Montgomery v. Lomos Altos, Inc.*, 2007-NMSC-002, ¶ 16, 141 N.M. 21, 150 P.3d 971 (filed 2006). "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Id.* (internal quotation marks and citation omitted). "Where reasonable minds will not differ as to an issue of material fact, the court may properly grant summary judgment." *Id.* "All reasonable inferences are construed in favor of the non-moving party." *Id.* (internal quotation marks and citation omitted).

### B.	Culberson Spring is Fully Appropriated

**{12}** We first address the State Engineer's assertion that this matter is easily resolved given the undisputed fact that Waterfall has applied for water from Culberson Spring, which is part of a water system that is fully appropriated. The State Engineer correctly observes that NMSA 1978, Section 72-5-7 (1985) provides that "[i]f, in the opinion of the state engineer, there is no unappropriated water available, he shall reject [an] application [for water appropriation]." We agree with the State Engineer that Waterfall's application seems readily subject to dismissal given the fact that the parties recognize that the water source they seek an appropriation from is fully appropriated.

**{13}** Notwithstanding that Waterfall has agreed that there could be a finding of no unappropriated water in the Pecos River stream system, it nevertheless attempts to circumvent this statutory roadblock to its application by asserting a "natural right" to the water in Culberson Spring under Section 72-5-29.

**{14}** Waterfall agrees that there could be a finding of no unappropriated water in the Pecos River stream system. It also concedes that it may exercise its alleged "natural right" to the waters specified in its application under Section 72-5-29 only if doing so would not interfere with preexisting vested water rights. Waterfall responds to this obstacle by alleging that the water it seeks to appropriate from Culberson Spring would be returned to the Pecos River stream system and, therefore, there would be no interference with any vested rights. It maintains that the district court erred when it granted summary judgment as this precluded inquiry into "whether [Waterfall's] natural right could be exercised without interfering with [other] vested water rights."

**{15}** In attempting to elucidate the argument made by Waterfall, the State Engineer describes Waterfall's request for unappropriated water as seeking a "super status water use." We agree that Waterfall appears to be asserting a superseding right to a reasonable share of water from Culberson Spring, irrespective of whether Culberson Spring is fully appropriated. This conclusion—that Waterfall is asserting a superseding right to water—is the only way to make sense of Waterfall's assertion that "as persons specifically identified in [Section 72-5-29, Waterfall possesses] a natural right . . . to utilize a reasonable share of the waters of the Pecos River [s]tream system and [Waterfall is] not precluded from exercising that natural right by a broad . . . administrative determination that there are no unappropriated waters in the Pecos River Basin."

## C.    Interpretation of Section 72-5-29

**{16}** We thus address Waterfall's argument that the natural right created by Section 72-5-29 grants it such a superseding right "to utilize a reasonable share of the waters of the Pecos River [s]tream system" despite the fact that the Pecos River stream system is fully appropriated. This argument raises two questions: (1) whether Section 72-5-29 provides Waterfall a superseding natural right to the waters specified in its application, and (2) whether the district court improperly denied Waterfall an opportunity to exercise this right

5

by granting summary judgment. Interpretation of a statute is a question of law which an appellate court reviews de novo. *See Morgan Keegan Mortgage Co. v. Candelaria*, 1998-NMCA-008, ¶ 5, 124 N.M. 405, 951 P.2d 1066 (filed 1997).

**{17}** The starting point in our efforts to resolve the questions raised by Waterfall's argument is the language of the statute in question. In interpreting statutes, we seek to give effect to the Legislature's intent, and in determining intent we look to the language used and consider the statute's history and background. *Key v. Chrysler Motors Corp.*, 121 N.M. 764, 768-69, 918 P.2d 350, 354-55 (1996). Section 72-5-29 provides:

> To the end that the waters of the several stream systems of the state may be conserved and utilized so as to prevent erosion, waste and damage caused by torrential floods, and in order that the benefits of the use of such waters may be distributed among the inhabitants and landowners of the country along said streams as equitably as possible without interfering with vested rights, the natural right of the people living in the upper valleys of the several stream systems to impound and utilize a reasonable share of the waters which are precipitated upon and have their source in such valleys and superadjacent mountains, is hereby recognized, the exercise of such right, however, to be subject to the provisions of this article.

We first observe that this statute was promulgated in 1909, and the language of the present statute remains virtually unchanged since its promulgation. This fact highlights the novelty of Waterfall's argument—we are aware of no other case since 1909 in which an applicant asserted a natural right to fully appropriated waters under Section 72-5-29, and Waterfall has directed us to none.

**{18}** The parties offer competing interpretations of Section 72-5-29. Waterfall asserts that Section 72-5-29 "affords persons such as the residents of Waterfall [a natural right] to impound and utilize a reasonable share of surface water" and has submitted four arguments in support of this conclusion. We note at the outset of our discussion of these arguments that we find them unpersuasive.

**{19}** First, Waterfall contends that the repeated use of the word "and" in Section 72-5-29 somehow supports its interpretation of the statute. Waterfall has given us no support for this contention, outside of a general discussion on the use of the conjunction, and we simply do not see why or how this is the case. Second, Waterfall focuses on the use of the word "natural" in Section 72-5-29 and argues that the presence of this word denotes that Section 72-5-29 establishes a right originating not from law but from some other source. Again, we find no support in the statutory language for Waterfall's argument, and it has not provided any reasoned basis to persuade us of the merits of this contention. Third, Waterfall asserts that, when enacted, Section 72-5-29 was inconsistent with the existing water law statutes and thus must have created a new right that Waterfall is entitled to exercise. This argument ignores the fact that the plain language of Section 72-5-29 indicates that it is, and always

6

was, subject to the provisions of the preexisting sections of NMSA 1978, Sections 72-5-1 to -39 (1907, as amended through 2007). Finally, Waterfall argues that were we to decline to adopt its interpretation of Section 72-5-29, we would be stripping the statute of any meaning. This argument also fails as we are persuaded that the State Engineer's interpretation of Section 72-5-29 properly explains the meaning of Section 72-5-29 and its interrelationship with the other statutes within Sections 72-5-1 to -39. First, we have no hesitation in concluding that Section 72-5-29 implicates fundamental water law policies.

{20} The State Engineer suggests that Section 72-5-29 should be interpreted in the following manner:

> The intended effect of Section 72-5-29 appears to be to smooth out the water supply curve by allowing water to be impounded during periods of excess supply, which otherwise could not be placed to beneficial use. Doing so [] promotes watershed health and prevents erosion and property damage by allowing impoundment and use of excessive or torrential flows under certain specific circumstances. [However, t]he State Engineer may nevertheless grant such an application only if there is unappropriated water to appropriate . . . and such an appropriation would not deprive prior appropriators of their water. . . . Thus, the Legislature clearly did not remove impoundment and utilization of flood waters from the general scheme for surface water appropriation, to create some sort of super status water use.

Given the complex nature of the statutory regime governing water appropriation in this state, relying on the expertise of the State Engineer to decipher how Section 72-5-29—a statute that has garnered little attention in one hundred years—fits into that scheme is prudent. Second, the State Engineer's interpretation of Section 72-5-29 comports with the plain language of the statute. *See In re Adjustments to Franchise Fees Required by Elec. Util. Indus. Restructuring Act of 1999*, 2000-NMSC-035, ¶ 9, 129 N.M. 787, 14 P.3d 525 ("In construing a particular statute, a reviewing court's central concern is to determine and give effect to the intent of the [L]egislature. In order to determine legislative intent, this Court looks primarily to the plain language of the statute, giving ordinary meaning to the words used." (internal quotation marks and citation omitted)).

{21} Section 72-5-29 plainly contemplates the potential utilization of water "so as to prevent erosion, waste and damage caused by torrential floods." The statute further specifies that any appropriation of the water contemplated by the provision should not "interfere[] with vested rights" and is "subject to the provisions of [Section 72-5-1 to -39]." Section 72-5-29. Accordingly, the State Engineer's contentions that Section 72-5-29 concerns appropriation of flood waters under certain specific circumstances, that an application to appropriate those flood waters is required, that an appropriation of those flood waters is appropriate only if that appropriation would not interfere with prior appropriations, and that Section 72-5-29 did not create a super status water use that supersedes the normal

appropriation process is consistent not only with the express language of the statute, but also with the underlying rationale of conservation and damage control.

{22}    Having arrived at the foregoing conclusions, we turn to the questions posed by Waterfall's argument that it possesses a superseding "natural right" to the waters of Culberson Spring under Section 72-5-29 and that it was erroneously denied a hearing to determine whether it was entitled to exercise that right.  In considering whether Section 72-5-29 provides Waterfall a superseding natural right to waters from Culberson Spring, we conclude that it does not.  As described above, Section 72-5-29 concerns flood waters and the appropriation of flood waters under certain specific circumstances.  Waterfall is not asserting a right to flood waters under Section 72-5-29.  It is asserting a right to water from Culberson Spring.  This incongruity disposes of Waterfall's claim that it is entitled to the water specified in its application under Section 72-5-29. In determining whether the district court erroneously denied Waterfall an opportunity to a hearing on whether it was potentially entitled to an appropriation under Section 72-5-29, we conclude that it did not.  The district court properly held that Waterfall was not entitled to an appropriation from Culberson Spring, a part of a fully appropriated water system.  Waterfall's reliance on Section 72-5-29 to challenge this determination is unavailing.

D.    **Alternative Grounds for Summary Judgment**

{23}    Moreover, even if we were to accept Waterfall's interpretation of Section 72-5-29, the district court was nevertheless correct in granting summary judgment on alternative grounds.  Waterfall's stated intent is to utilize a "reasonable share" of water from Culberson Spring "for use in the community water system serving the Waterfall Subdivision." According to Waterfall, water use in Waterfall's community water system means "household and domestic" use.  Waterfall contends that the 320 acre-feet per year that it requested for household and domestic use would result only in "minimal consumptive use."  Further, Waterfall argues that the used waters that are diverted from Culberson Spring would somehow then be "pass[ed] on downstream to the other vested right holders."  The only basis for these assertions are James Murrill's unsupported and conclusory statements that "the source of the water for the [Culberson] Spring is precipitated on the slopes of the valley where the Spring and the Waterfall subdivisions are located" and that "the water is discharged back into the ground in the valley through individual liquid waste disposal systems." Mr. Murrill's statements, based only "upon [his] personal knowledge," are neither competent nor admissible and are therefore insufficient to defeat summary judgment. *Pedigo v. Valley Mobile Homes, Inc.*, 97 N.M. 795, 798, 643 P.2d 1247, 1250 (Ct. App.1982) (noting that "factually unsupported opinion testimony" is "not sufficient to defeat a motion for summary judgment").  The State Engineer found, and the district court agreed, that Waterfall's exercise of its alleged natural right would interfere with preexisting vested water rights.  We agree, and Waterfall has provided no evidence to the contrary. Furthermore, this conclusion is a proper basis upon which to have granted summary judgment dismissing Waterfall's application. *See State ex rel. State Eng'r v. Comm'r of Pub. Lands*, 2009-NMCA-004, ¶ 15, 145 N.M. 433, 200 P.3d 86 (filed 2008) ("The

8

appropriation of water for beneficial use establishes the priority date of a water right in relation to other water rights, and the full right of an earlier appropriator will be protected, to the extent of that appropriator's use, against a later appropriator.").

## III. CONCLUSION

{24} Accordingly, we hold that summary judgment was proper as a matter of law and that Waterfall was not entitled to the appropriation specified in its application, nor was it entitled to those waters under Section 72-5-29. We affirm the district court's ruling.

{25} **IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**TIMOTHY L. GARCIA, Judge**

**Topic Index for _Waterfall Community Water Users Assn. v. NM State Engineer_, No. 28, 049**

| | |
|---|---|
| **CP** | **CIVIL PROCEDURE** |
| CP-SJ | Summary Judgment |
| | |
| **GV** | **GOVERNMENT** |
| GV-SE | State Engineer |
| | |
| **NR** | **NATURAL RESOURCES** |
| NR-AP | Appropriation |
| NR-WL | Water Law |